1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10
11  RODOLFO BARAJAS,                )   Case No. CV 15-1208-SP
                                    )
12              Plaintiff,          )
                                    )
13        v.                        )   MEMORANDUM OPINION AND
                                    )   ORDER
14  CAROLYN W. COLVIN,              )
15  Acting Commissioner of Social Security )
    Administration,                 )
16                                  )
                Defendant.          )
17  _____)

18

19                              **I.**

20                        **INTRODUCTION**

21        On February 19, 2015, plaintiff Rodolfo Barajas filed a complaint against

22  defendant, the Commissioner of the Social Security Administration

23  ("Commissioner"), seeking a review of a denial of a period of disability and

24  disability insurance benefits ("DIB").  Both plaintiff and defendant have consented

25  to proceed for all purposes before the assigned Magistrate Judge pursuant to 28

26  U.S.C. § 636(c).  The court deems the matter suitable for adjudication without

27  oral argument.

28

1   Plaintiff presents two issues for decision: (1) whether the Administrative

2   Law Judge ("ALJ") properly evaluated plaintiff's transferable skills; and (2)

3   whether the ALJ  properly considered plaintiff's credibility.  Memorandum in

4   Support of Plaintiff's Complaint ("P. Mem.") at 5-26; Memorandum in Support of

5   Defendant's Answer ("D. Mem.") at 2-11; Plaintiff's Reply ("Reply") at 3-6.

6   Having carefully studied the parties' written submissions, the

7   Administrative Record ("AR"), and the decision of the ALJ, the court concludes

8   that, as detailed herein, although the ALJ properly considered plaintiff's

9   credibility, the ALJ erred in determining plaintiff's transferable work skills.

10   Consequently, the court remands this matter to the Commissioner in accordance

11   with the principles and instructions stated herein.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

14   Plaintiff, who was fifty-four years old on his alleged disability onset date,

15   completed high school.  AR at 60, 96, 106, 116, 231.  His past relevant work was

16   as a shipping supervisor, upholstery supervisor, and assembly room supervisor.

17   *Id.* at 45, 88, 104, 252, 290.

18   On March 28, 2011, plaintiff filed an application for a period of disability

19   and DIB, alleging an onset date of March 7, 2009, due to back pain from four

20   discs worn out, pain in both legs, stress, and shingles.  *Id*. at 96, 106-07, 190.  The

21   Commissioner denied plaintiff's applications initially and upon reconsideration,

22   after which plaintiff filed a request for a hearing.  *Id.* at 96-128, 132.

23   On October 19, 2012 plaintiff appeared and testified at a hearing before

24   the ALJ.  *Id.* at 58-87.  Vocational expert ("VE") Martin G. Brodwin also testified.

25   *Id.* at 88-91.  To update the record before making a disability determination, the

26   ALJ ordered orthopaedic and psychological examinations of plaintiff and

27   continued plaintiff's hearing.  *Id.* at 92-94.

28

On June 17, 2013 plaintiff appeared at a second hearing before the ALJ. *Id.* at 44.  VE Carmen Roman testified at the hearing. *Id.* at 44-55   On July 26, 2013, the ALJ denied plaintiff's application for benefits. *Id.* at 23-33.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that although plaintiff engaged in substantial gainful activity between August 1, 2011 and September 30, 2011, there was a continuous twelve-month period during which plaintiff did not engage in any substantial gainful activity. *Id.* at 25-26.

At step two, the ALJ found plaintiff suffered from the following impairments that in combination are severe: degenerative disc disease and spondylosis of the lumbosacral spine with radiculopathy; dysthymia; and an anxiety disorder in partial remission by December 11, 2009. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 27-28.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform sedentary work, with the limitations that he could: lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk for fifteen minutes at once; and sit for thirty to forty minutes at once. *Id.* at 28.  The ALJ also determined plaintiff could: no more than occasionally use foot controls; never climb ladders, ropes, or scaffolds; and only occasionally climb

---

[1]  Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

1  ramps and stairs, balance, stoop, kneel, crouch, and crawl.  *Id.*  Mentally, the ALJ
2  determined plaintiff could perform simple to semi-skilled work.  *Id.*

3      The ALJ found, at step four, plaintiff was incapable of performing his past
4  relevant work.  *Id*. at 31.  The ALJ also indicated plaintiff acquired from his past
5  relevant work the following transferable work skills: management skills, capability
6  to supervise, knowledge of production and shipping, coordinating production
7  shipping, ability to direct activities in manufacturing, overseeing paperwork, and
8  ensuring that processes are completed.  *Id.* at 32.

9      At step five, the ALJ found – based on plaintiff's age, education, work
10 experience, RFC, and transferable work skills acquired from past relevant work –
11 there were jobs that existed in significant numbers in the national economy that
12 plaintiff could have performed, including appointment clerk and order clerk.  *Id.* at
13 32-33.  Consequently, the ALJ concluded that, for the relevant period, plaintiff did
14 not suffer from a disability as defined by the Social Security Act.  *Id*. at 33.

15     Plaintiff filed a timely request for review of the decision, which the
16 Appeals Council denied.  *Id.* at 1-3, 17.  The ALJ's decision stands as the final
17 decision of the Commissioner.

### III.

### STANDARD OF REVIEW

20     This court is empowered to review decisions by the Commissioner to deny
21 benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security
22 Administration must be upheld if they are free of legal error and supported by
23 substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001)
24 (as amended).  But if the court determines that the ALJ's findings are based on
25 legal error or are not supported by substantial evidence in the record, the court
26 may reject the findings and set aside the decision to deny benefits.  *Aukland v.*
27 *Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d
28 1144, 1147 (9th Cir. 2001).

1    "Substantial evidence is more than a mere scintilla, but less than a

2    preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such

3    "relevant evidence which a reasonable person might accept as adequate to support

4    a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

5    F.3d at 459.  To determine whether substantial evidence supports the ALJ's

6    finding, the reviewing court must review the administrative record as a whole,

7    "weighing both the evidence that supports and the evidence that detracts from the

8    ALJ's conclusion." *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be

9    affirmed simply by isolating a specific quantum of supporting evidence.'"

10   *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243

11   (9th Cir. 1998)).  If the evidence can reasonably support either affirming or

12   reversing the ALJ's decision, the reviewing court "'may not substitute its

13   judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016,

14   1018 (9th Cir. 1992)).

15                                   **IV.**

16                             **DISCUSSION**

17   **A.**   **The ALJ Did Not Properly Evaluate Plaintiff's Transferable Skills**

18           Plaintiff argues the ALJ failed to identify or resolve a conflict between the

19   VE testimony and the Dictionary of Occupational Titles ("DOT").  P. Mem. at 5-

20   21.  Plaintiff additionally argues that more than a little vocational adjustment is

21   required for him to perform the "other work" cited by the ALJ.  P. Mem. at 10-25;

22   *see* AR at 33 (finding plaintiff not disabled because his transferable skills provide

23   him the ability to perform other work that exists in significant numbers in the

24   national economy including that of an appointment clerk and order clerk).  Plaintiff

25   contends the ALJ's implicit finding, based on the VE's testimony, that "very little,

26   if any, adjustment in terms of tools, work process, work setting, or the industry"

27   would be required of plaintiff in applying transferable skills to other work is not

28   consistent with agency policies, the DOT, or the Selected Characteristics of

                                        5

Occupations Titles ("SOC"). 20 C.F.R. § 404.1568(d)(4); *see* P. Mem. at 5-21; AR at 32-33, 52-53.

To support finding a claimant not disabled at step four or five, the ALJ must cite evidence demonstrating either that the claimant can perform his past work, or that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is source of reliable job information).

An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue*, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p).[2] But failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19. Even when the ALJ fulfills his initial obligation to inquire whether the VE's testimony conflicted with the DOT, that is not the end of his obligations.

Where a VE wrongly testifies there is no conflict and "evidence from a VE 'appears to conflict with the DOT,' an ALJ must obtain 'a reasonable explanation

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

1   for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)

2   (quoting SSR 00-4p).  If the ALJ fails to obtain an explanation for and resolve an

3   apparent conflict – even where the VE did not identify the conflict – the ALJ errs.

4   *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011)

5   (where VE incorrectly testified there was no conflict between her testimony and

6   DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or

7   reconcile the conflict).

8          Here, the VE at plaintiff's second hearing initially testified she did "not

9   believe" plaintiff obtained transferable skills from his past work.  AR at 47.

10  Plaintiff contends, after being prodded by the ALJ, the VE changed her testimony

11  without a proper inquiry into DOT descriptions that conflict with her new

12  determination, and the ALJ failed to make further inquiry or resolve this error.  P.

13  Mem. at 5-21.

14         1.     **VE Testimony at Plaintiff's First Hearing**

15         At plaintiff's first hearing, VE Martin Brodwin described plaintiff's past

16  relevant work as a shipping supervisor, upholstery supervisor, and assembly room

17  supervisor.  AR at 86-87.  VE Brodwin determined each of these jobs has a

18  specific vocational preparation ("SVP") code of either 6 or 7.[3]  *Id.*  He further

19  opined that plaintiff had acquired many transferable skills from his past relevant

20  work, including: "[m]anagement skills, capability to supervise, knowledge of

21

22

23         [3]    Every job listed in the DOT includes an SVP indicating "the amount of

24  lapsed time required by a typical worker to learn the techniques, acquire the
    information, and develop the facility needed for average performance in a specific

25  job-worker situation." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1230

26  n.4 (9th Cir. 2009) (quoting DOT, Appendix C, page 1009 (4th ed.1991)); *see* SSR
    00-4p ("Using the skill level definitions in 20 CFR 404.1568 and 416.968,

27  unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an

28  SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.").

production and shipping, coordinating production shipping, [and the] ability to direct activities in manufacturing." *Id.* at 90.

Based on the ALJ's hypotheticals, VE Brodwin identified three jobs in the national economy plaintiff could perform: production clerk with an SVP of 4 (DOT 221.382-018), repair order clerk with an SVP of 3 (DOT 221.382-022), and production scheduler with an SVP of 6 (DOT 221.162-010). *Id.* He opined that plaintiff's management and supervisory skills would not transfer to these position. *Id.* But his "coordinating production and shipping, knowledge of shipping production, knowledge of priorities, knowledge of manufacturing and industry" and his "clerical and paperwork [skills] associated with shipping, production, and similar" would transfer to all three of these sedentary skilled or semi-skilled positions. *Id.* at 90-91. VE Brodwin was not questioned further about plaintiff's transferable skills, the level of vocational adjustment necessary for plaintiff to implement these skills, or whether his testimony was consistent with the DOT. At the conclusion of his first hearing, the ALJ ordered plaintiff to attend orthopaedic and psychological consultative examinations to augment and update the record. *Id.* at 92-94.

## 2. **VE Testimony at Plaintiff's Second Hearing**

The ALJ heard testimony from a second VE, Carmen Roman, at plaintiff's second hearing. AR at 45-55. Before taking this testimony, the ALJ summarized VE Brodwin's testimony from the first hearing:

> At the last hearing – well, we know that the claimant is advanced age and has a high school education. And at the last hearing, the vocational expert categorized the claimant's past work as a shipping supervisor and gave the DOT number of 222.137-030, which was skilled and light work, but because Mr. Barajas was a working supervisor as he performed it it was heavy. He was also an upholstery supervisor, with a DOT number of 780.131-014, which is

1    light and skilled with an SVP of seven, but was performed at the very

2    heavy level.  And then the last occupation was that of an assembly

3    room supervisor, 699.130-010, light and skilled, with an SVP of

4    seven, but heavy as actually performed.  Now, I should tell you when

5    we talked – when I asked the vocational expert about transferrable

6    skills to sedentary work – well, maybe we'll leave it at that and then

7    I'll ask you your opinion about transferability of skills.

8  *Id.* at 45.

9      The ALJ then presented VE Roman with an updated hypothetical.  *Id.* at 46-

10 47.  VE Roman opined that the hypothetical individual would be unable to

11 perform plaintiff's past relevant work.  *Id.* at 47.  She further stated she did not

12 believe such an individual would have acquired any skills transferable to work

13 within the RFC presented.  *Id.*  The ALJ responded with apparent surprise.  *Id.*  He

14 explained that VE Brodwin found, based "on a somewhat similar residual

15 functional capacity," plaintiff would have skills transferable to production clerk,

16 repair order clerk, and production scheduler occupations.  *Id.*  He provided VE

17 Roman with the corresponding DOT codes.  *Id.*

18     VE Roman reviewed the three positions and reasoned, because the positions

19 of production clerk and production scheduler are specific to production they

20 require timely work within quotas, which plaintiff's restrictions would preclude.

21 *Id.* at 48-49.  The ALJ again informed VE Roman that VE Brodwin opined

22 plaintiff could perform these jobs, but he acknowledged that VE Roman was at

23 liberty to disagree with VE Brodwin's determination.  *Id.* at 48.  The ALJ inquired

24 whether plaintiff's limitations would preclude him from all three of the previously

25 identified positions.  VE Roman then found the work of a repair order clerk

26 "would allow [plaintiff] the flexibility of sitting or standing almost at will.  And

27 definitely would fall in line with the kind of work that he used to do, where he's

28 overseeing paperwork and making sure that the process is going through."  *Id.*

at 49.

The ALJ asked VE Roman if any other sedentary, skilled or semi-skilled jobs in the national economy existed that could be performed by plaintiff based on his transferable skills. *Id.* at 50-51. The VE indicated the positions of appointment clerk with an SVP of 3 (DOT 237.367-010) and order clerk with an SVP of 4 (DOT 249.362-026) could be performed by plaintiff, and these jobs existed in significant numbers in the national and local economy. *Id.* at 51-52.

The ALJ asked VE Roman if her testimony was consistent with the DOT. *Id.* at 52. She responded in the affirmative. *Id.* The ALJ next inquired which of plaintiff's skills would transfer to the positions of appointment clerk and order clerk. *Id.* VE Roman indicated plaintiff had transferable skills of keeping a schedule and ensuring orders are processed properly. *Id.* The ALJ then reminded VE Roman, "in order to find for someone who's over 55, to find transferrable skills there has to be very little if any vocational adjustment required in terms of tools, work processes, work settings, or the industry." *Id.* at 52-53. The ALJ asked VE Roman, "would these three occupations, the repair order clerk, the appointment clerk, and the order clerk, require more than very little if any vocational adjustment in terms of the tools, the work processes, the work settings, or the industry?" *Id.* at 53. VE Roman began responding, "I don't believe that they would require more than a little bit of –" when the ALJ interrupted her by saying "Okay." *Id.* VE Roman then completed her sentence with "getting into the business," and the ALJ moved on to a different line of inquiry. *Id.*

### 3.   **The ALJ Findings**

At step four, the ALJ found plaintiff's past relevant work exceeds his RFC. *Id*. at 32. But the ALJ indicated plaintiff acquired transferable skills from his past relevant work:

> [T]he vocational expert at the first hearing testified that all of the
> claimant's past relevant work was skilled with SVP codes of six and

1  seven.  He further testified that these jobs required the following

2  skills: management skills, capability to supervise, knowledge of

3  production and shipping, coordinating production shipping, ability to

4  direct activities in manufacturing.  In addition, the vocational expert

5  at the supplemental hearing testified that the claimant's past relevant

6  work required the following skill: overseeing paperwork and ensuring

7  that processes are completed.

8  *Id.* at 32.  The ALJ then considered whether plaintiff could make a successful

9  adjustment to other work.  *Id.*  He found plaintiff capable of performing the work

10  of an appointment clerk and an order clerk, because these positions "could be

11  performed by an individual with the same age, education, past relevant work

12  experience, and residual functional capacity as the claimant, and which require

13  skills acquired in the claimant's past relevant work but no additional skills."  *Id.*

14  at 33.  Notably, the ALJ did not address the degree of vocational adjustment

15  necessary for plaintiff to utilize the identified transferable skills in either new job.

16  **4.     The ALJ Failed to Specify the Skills Attributed to Plaintiff's Past**

17  **Work Transferable to the Identified Other Work, or the Degree**

18  **of Vocational Adjustment Required to Implement Those Skills**

19  Plaintiff first argues VE Roman was prodded into altering her opinion about

20  plaintiff's transferable skills.  P. Mem. at 6.  There is no question the ALJ tried to

21  stop VE Roman from giving her opinion until he made sure she was aware of VE

22  Brodwin's findings.  Although this might be termed prodding, the court does not

23  find it was improper.  The ALJ noted VE Roman could "certainly disagree with"

24  VE Brodwin's opinion (AR at 48), and after reconsidering, VE Roman did

25  disagree with VE Brodwin in part.  *Id.* at 49.

26  Plaintiff next argues the ALJ failed to recognize the apparent conflict

27  between the DOT and the VE's testimony.  Specifically, he argues the ALJ failed

28  to follow the transferability of skills analysis ("TSA") as set forth in the agency's

1   Policy Operations and Manual System ("POMS") manual.  P. Mem. at 8-21.  But

2   POMS "does not impose judicially enforceable duties on either this court or the

3   ALJ." *Lockwood v. Comm'r.*, 616 F.3d 1068, 1073 (9th Cir. 2010).  Defendant

4   argues the version of POMS's TSA cited by plaintiff was not in effect at the time

5   of the ALJ's determination and there is no authority supporting its retroactive

6   application.  D. Mem. at 7.

7        Regardless of the applicability of the TSA analysis, the ALJ was charged

8   with determining whether or not plaintiff – as an individual aged fifty-five or over

9   deemed to have skills transferable to alternative jobs – would be able to perform

10  alternative jobs with "very little, if any, vocational adjustment required in terms of

11  tools, work processes, work settings, or the industry." *Renner v. Heckler*, 786

12  F.2d 1421, 1424 (9th Cir. 1986) (citing 20 C.F.R. § 404, Appendix 2, Table I, Rule

13  201.00(f)).  The ALJ must consider the degree of vocational adjustment involved

14  in utilizing acquired skills in a new job.  Individuals who are of advanced age

15       cannot be expected to make a vocational adjustment to substantial

16       changes in work simply because skilled or semi-skilled jobs can be

17       identified which have some degree of skill similarity with their past

18       relevant work.  In order to establish transferability of skills for such

19       individuals, the semiskilled or skilled jobs duties of their past work

20       must be so closely related to other jobs which they can perform that

21       they could be expected to perform these other identified jobs at a high

22       degree of proficiency with a minimal amount of job orientation.

23  SSR 82-41; *see Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990) ("As age

24  is one of the factors that must be considered, it should surprise no one that the

25  Secretary faces a more stringent burden when denying disability benefits to

26  older claimants.").

27       The ALJ must explicitly state his or her findings in this regard "to assure

28  that the correct legal standard was applied.  Thus the ALJ must either make a

1   finding of 'very little vocational adjustment' or otherwise acknowledge that a
2   more stringent test is being applied which takes into consideration [the claimant's]
3   age." *Renner*, 786 F.2d at 1424; *see also Greenwood v. Chater*, 1996 WL 945021,
4   at *8 (C.D. Cal. 1996) (finding the ALJ erred by failing to make specific findings
5   as to vocational adjustment needed).  Where, as here, the ALJ finds a claimant of
6   advanced age has transferable skills but does not explicitly find little vocational
7   adjustment required, the ALJ errs.  *Renner*, 786 F.2d at 1424.

8        At plaintiff's first hearing, in addition to failing to ascertain from VE
9   Brodwin the degree of vocational adjustment applicable to the transferable skills
10  identified, the ALJ did not inquire about the tools, work processes, work settings,
11  or the industries associated with the other work identified.  *See* AR at 88-91.  Nor
12  did the ALJ or VE Brodwin draw any comparisons between plaintiff's past work
13  and the identified other work, with the exception of discussing each positions'
14  SVP.  *See Id.*; *Felix v. Astrue*, 2012 WL 424381, at *2 (C.D. Cal. Feb. 9, 2012)
15  (arguing SVP levels are an aid in classifying work, not a specific measurement of
16  what any one individual is capable of performing).  More broadly, the ALJ failed
17  to inquire if VE Brodwin's testimony was consistent with the DOT.  This failure
18  cannot be deemed harmless error in light of VE Roman's conflicting testimony.
19  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).  Thus, the ALJ erred in
20  so far as he relied on any of VE Brodwin's testimony.  *See Massachi*, 486 F.3d at
21  1152-53; SSR 00-4p.  But because the ALJ did not specifically cite to any other
22  work identified by VE Brodwin, and thus it is not clear if the ALJ relied on VE
23  Brodwin's testimony, the court does not conclude its analysis here.

24       At plaintiff's second hearing, the ALJ did ask VE Roman if her testimony
25  was consistent with the DOT.  AR at 52.  Defendant contends, after confirming
26  with the VE that there was no conflict, the ALJ sufficiently inquired about the
27  degree of vocational adjustment.  D. Mem. at 3.  Plaintiff argues an apparent
28  conflict existed and the ALJ failed to identify or obtain any explanation for the

1   deviation from the DOT.  P. Mem. at 9-18 (providing a detailed comparison of the

2   DOT codes for plaintiff's past relevant work and the other jobs identified, and

3   arguing the comparison supports finding a substantially greater degree of

4   vocational adjustment); *see* SSR 00-4p; *Overman*, 546 F.3d at 463; *Hernandez*,

5   2011 WL 223595, at *2-5.  Defendant argues plaintiff's lay interpretation of the

6   DOT may not supplant the expert conclusions of the VE.  D. Mem. at 4-5.  The

7   court generally agrees.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir.

8   2005) ("A VE's recognized expertise provides the necessary foundation for his or

9   her testimony.").  But as defendant acknowledges, "specific findings on

10  transferable skills are necessary even where the ALJ relies on the testimony of a

11  VE." *Bray v. Comm'r*, 554 F.3d 1219, 1225 (9th Cir. 2009).

12      Although the ALJ's question to VE Roman regarding vocational adjustment

13  includes the appropriate boiler plate language, the court finds little meaningful

14  discussion in terms of the comparing the tools, processes, settings, or industries of

15  plaintiff's past relevant work and the other jobs identified by VE Roman.  *See* AR

16  at 48-49, 52; 20 C.F.R. § 404.1568(d)(2) ("Transferability is most probable and

17  meaningful among jobs in which – (i) The same or a lesser degree of skill is

18  required; (ii) The same or similar tools and machines are used; and (iii) The same

19  or similar raw materials, products, processes, or services are involved.").  The

20  majority of the discussion in the record actually focuses on how the setting and

21  processes would preclude plaintiff from several other positions, including two of

22  the three identified by VE Brodwin.  *Id.*

23      Crucially, the ALJ's opinion gives no indication that he made any finding as

24  to the level of vocational adjustment necessary for the application of the

25  transferable skills, nor can this be fairly inferred from the hearing testimony.  *See*

26  AR at 52-53.  At the hearing the ALJ interrupted VE Roman, who provided an

27  equivocal and incomplete explanation.  *Id.*  The court cannot determine if not

28  "requir[ing] more than a little bit of . . . getting into the business" (*id.* at 53) meets

the required finding of "a minimal amount of job orientation," and the ALJ did not explicitly draw this inference.  *See* SSR 82-41; AR at 32-33; *Terry*, 903 F.2d at 1279 ("While it is possible to imagine cases where a vocational expert's understanding of the applicable standards would be clear from context, this is not such a case.").  Indeed, the ALJ fails to even mention vocational adjustment in his decision, much less explicitly find little was required.  Furthermore, although the ALJ recounts in his decision the transferable skills identified by each of the VEs (*id.* at 32), he does not specify which, if any, he finds apply to the other work. *Id.* at 33.  Thus, even without relying on plaintiff's lay analysis, it is clear the ALJ erred.

In these circumstances, and where the VE failed to testify with specificity about the transferability of plaintiff's skills, the ALJ erred in finding plaintiff could do the work of a appointment clerk and order clerk based in part on his transferable skills while failing to identify the specific transferable skills or find these alternative jobs require little to no vocational adjustment in light of plaintiff's age, as required by 20 C.F.R. § 404.1568(d)(4).  *See Bray*, 554 F.3d at 1225 ("It is the ALJ, and not the VE, who is responsible for making findings.").

**B.     The ALJ Properly Considered Plaintiff's Credibility**

Plaintiff argues the ALJ failed to conduct a proper credibility analysis. P. Mem. at 21-26; Reply at 5-6.  Plaintiff claims the ALJ failed to present clear and convincing reasons for rejecting his testimony.  *Id.*  The court disagrees.

An ALJ must make specific credibility findings, supported by the record. SSR 96-7p.  To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment "'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  Second, if there

is no evidence of malingering, an "ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."[4] *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted); *accord Burrell*, 775 F.3d at 1136.

"[A]n ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). To permit a meaningful review of the ALJ's credibility determination, the ALJ must "specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* The ALJ may consider several factors in weighing a claimant's credibility, including: ordinary techniques of credibility evaluation such as a claimant's reputation for lying; the failure to seek treatment or follow a prescribed course of treatment; and a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell*, 947 F.2d at 346-47. The ALJ may additionally consider "inconsistencies either in [claimant's] testimony or between his testimony and his conduct" and "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at

---

[4]   Defendant argues the ALJ was only required to provide specific reasons supported by substantial evidence, rather than clear and convincing reasons, as the clear and convincing standard is contrary to 42 U.S.C. § 405(g). D. Mem. at 8-9. But the Ninth Circuit has explicitly rejected that argument. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). Accordingly, this court applies the clear and convincing standard.

29.  At the second step, because the ALJ did not find any evidence of malingering, he was required to provide clear and convincing reasons for finding plaintiff less than fully credible.  *Id.*  The ALJ discounted plaintiff's credibility because: (1) "the objective evidence is consistent with the residual functional capacity and inconsistent with the claimant's allegations that he is unable to perform any work activity"; (2) his "overall treatment history is also inconsistent with his allegations"; and (3) his "reported daily activities are inconsistent with his alleged degree of impairment."  AR at 29-30.

As an initial matter, the ALJ specified those portions of plaintiff's testimony he found lacking in credibility:

> The claimant alleges that he is limited in his ability to work by
> constant sharp pain in the back and both legs.  He also alleges that he
> is limited by stress, lightheadedness, and dizziness.  In addition, he
> alleges that he is depressed.

*Id.* at 29 (internal citations omitted).

The ALJ's first ground for an adverse credibility finding was that the objective evidence is not consistent with plaintiff's allegations.  *Id.*  An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but lack of objective medical evidence may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001) (asserting a lack of corroborative objective medical evidence may be one factor in evaluating credibility).  Here, the ALJ found the MRI, x-ray, and diagnostic evidence indicate plaintiff's physical symptoms permit a range of sedentary work.  AR at 29.  The ALJ noted the most recent orthopedic consultative examination showed a decreased sensation in the lateral aspect of the left calf, but was otherwise unremarkable.  *Id.*; *see id.* at 486-91.  The ALJ's determination regarding plaintiff's physical limitations is supported by substantial evidence and

1  was one clear and convincing reason supporting the ALJ's determination of

2  plaintiff's credibility.

3       Plaintiff argues the ALJ applied an incorrect standard when he found the

4  objective evidence of plaintiff's physical limitation inconsistent with plaintiff's

5  claimed inability "to perform any work activity."  P. Mem. at 23 (quoting AR at

6  29).  Plaintiff contends he is disabled, not because he can perform no work, but

7  rather because he cannot perform sustained work throughout a normal workday

8  and during a normal workweek.  P. Mem. at 23.  Plaintiff misconstrues the ALJ's

9  finding.  The ALJ determined plaintiff has the RFC to perform sedentary semi-

10  skilled work on a sustained basis, in part because plaintiff's claims to the contrary

11  were discounted by the ALJ.  AR at 29-30, 33; *see id.* at 66 (testifying he

12  experiences lower back pain "Every day. All the Time.").

13       The ALJ separately reviewed the record of plaintiff's psychological

14  evaluations and treatments.  *Id.* at 30.  Plaintiff's mental status was generally

15  within normal limits at his most recent consultative psychological evaluation.  *Id.*;

16  *see id.* at 501-07.  The ALJ noted as significant that plaintiff scored a 10 on the

17  Millon Clinical Multiaxial Inventory – III inconsistency (W) scale.  AR at 30.

18  Although no specific reasoning is provided for assigning significance to this score,

19  the ALJ stated it invalidated plaintiff's responses on the test.  *Id.*  The implication

20  is that the ALJ discounted plaintiff's credibility due to his lack of effort or failure

21  to cooperate during the consultative exam.  But the clinical psychologist

22  repeatedly stated plaintiff "appeared to exert a satisfactory effort throughout the

23  evaluation" and he "presented as a cooperative and polite individual with adequate

24  interpersonal skills."  *Id.* at 501, 504, 506.  The psychologist concluded plaintiff's

25  "test performances appear to be valid indicators of his actual levels of

26  functioning."  *Id.* at 501.

27       Based on the forgoing, the ALJ's finding that the objective evidence

28  undermines plaintiff's asserted mental limitations is not supported by substantial

1   evidence and thus is not a relevant factor that should have been considered during
2   the ALJ's determination of plaintiff's credibility.  Nevertheless, as discussed
3   below, the ALJ provides two additional clear and convincing reasons for finding
4   plaintiff less than fully credible, thus any error here is harmless error.  *See Molina*,
5   674 F.3d at 1115 (quoting *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004)
6   ("[A]n error is harmless so long as there remains substantial evidence supporting
7   the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate
8   conclusion.'").

9       The ALJ's second ground for an adverse credibility finding was plaintiff's
10  overall limited treatment history.  AR at 30; *See Tommasetti*, 533 F.3d at 1039;
11  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (permitting ALJ to consider
12  "the unexplained absence of treatment" in determining credibility).  The ALJ
13  again separated his analysis of plaintiff's physical and mental impairments.  The
14  record shows plaintiff received limited treatment for his physical conditions.
15  Although plaintiff was prescribed Ranitidine and an electrode stimulator, he only
16  used those as needed.  AR at 30; *see id.* at 68-69, 292.  Plaintiff declined to pursue
17  surgical procedures recommended by his treating physician.  *Id.* at 30; *see id.* at
18  68, 374, 487.  At the hearing the ALJ noted a gap in plaintiff's medical records,
19  and plaintiff confirmed he received no treatments from February 2010 through
20  January 2011.  *Id.* at 59, 73-74.  To control his back and leg pain, plaintiff only
21  used the over-the-counter medication Advil, and he reported the pain medication
22  was effective and did not cause adverse side effects.  *Id.* at 30; *see id.* at 67-68, 74,
23  79.  The ALJ found plaintiff's treatment history "tends to indicate that his
24  symptoms are controlled with prescribed treatment."  *Id.* at 30; *see id.* at 67
25  (testifying both physical therapy and medication helped plaintiff sleep and
26  relieved pain); *id.* at 272 (indicating medication relieves the pain on a July 2008
27  pain questionnaire); *Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006)
28  ("Impairments that can be controlled effectively with medication are not disabling

1  for purposes of determining eligibility for SSI benefits.").

2        The ALJ found the record equally devoid of treatment for plaintiff's mental

3  impairments.  AR at 30.  Plaintiff had four mental health sessions and was

4  prescribed Prozac when he filed his Workers' Compensation claim.  *Id.* at 30; *see*

5  *id.* at 445, 502.  But plaintiff ceased taking Prozac after six months and his treating

6  therapist informed plaintiff he did not need any additional sessions.  *Id.* at 30; *see*

7  *id.* at 74-75, 502.  The record contains no subsequent mental healthcare.  *Id.* at 30.

8        Plaintiff argues the ALJ unfairly reviewed the record and there is no lack of

9  treatment.  Reply at 5-6.  Plaintiff stated he did not take medications because he

10 lacked the financial wherewithal to afford them, he feared addiction, and he did

11 not want to cover up the pain which might cause him to further injure himself.  *Id.*;

12 AR at 75-76, 79-80; *see Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A]

13 disabled claimant cannot be denied benefits for failing to obtain medical treatment

14 that would ameliorate his condition if he cannot afford that treatment." ).  Plaintiff

15 acknowledged surgery was recommended as his only remaining viable treatment

16 option, but he stated his anxiety and frustration prevented him from moving

17 forward with it.  P. Mem. at 25; *see* AR at 68, 314.

18       Yet, at the hearing plaintiff also stressed that because there is no "cure" for

19 his condition, he chooses to live with pain rather than pursue any treatment

20 options.  AR at 68.  He stated,

21       I really don't like taking medication, especially pain medication I

22       don't like taking because I've heard too many cases of, you know,

23       people getting addicted to it.  So I'd rather deal with the pain.

24 *Id.* at 76.  Plaintiff testified he similarly refused his doctor's recommendation for

25 epidural shots.  *Id.* at 79.  After plaintiff claimed he lacked resources to pay for

26 treatment, the ALJ confirmed plaintiff was aware of publicly funded treatment

27 facilities but chose not to pursue treatment at any of these facilities.  *Id.* at 76.

28 Plaintiff conceded,

1          they already told me that there's no – there's no hope to getting any

2          better, that this is going to be for stationary forever, I don't see any

3          sense in going and looking for something that's not going to happen.

4    Id. at 76.  Although plaintiff presents several reasons for his lack of treatment,

5    including lack of finances, his reasons fail to fully explain his decision not to

6    pursue all the treatments available to him.  It is clear the ALJ was not persuaded

7    by plaintiff's reasons for not following his doctors' recommendations, and instead

8    found this history undercuts the credibility of plaintiff's allegations.

9          The court "may not engage in second-guessing" the ALJ's well supported

10   determinations.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002); *see*

11   *Molina*, 674 F.3d at 1113-14 (affirming credibility finding, in light of plaintiff's

12   unpersuasive reasons for resisting treatment, where despite repeated efforts of his

13   physicians plaintiff failed to comply with recommended treatment).

14   Determination of credibility is an issue reserved solely to the Commissioner.

15   *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.2006).  When more than one

16   inference can reasonably be drawn from the record, this court will "'not substitute

17   its judgment for that of the ALJ.'"  *Aukland*, 257 F.3d at 1035 (quoting *Matney*,

18   981 F.2d at 1018).   Plaintiff's lack of treatment is a clear and convincing reason

19   for finding his subjective statements about pain less than fully credible.  *See*

20   *Tommasetti*, 533 F.3d at 1039; *Orteza*, 50 F.3d at 750; *see also Fair v. Bowen*, 885

21   F.2d 597, 603 (9th Cir. 1989).

22        The ALJ's third and final ground  for an adverse credibility finding was that

23   plaintiff "is able to spend a substantial part of [his] day in activities involving the

24   performance of functions readily transferable to competitive work."  AR at 30.

25   The ALJ noted plaintiff's daily activities, as he reported and his sister confirmed,

26   include tending to his personal hygiene, preparing meals, light housekeeping,

27   running errands, and regularly spending time with others.  *Id.*; *see id.* at 264-68;

28   273-74; 503.  Additionally, plaintiff drives his own car, sometimes rides the bus,

1    and is able to handle money. *Id.* at 30; *see id.* at 61, 267, 278-79, 504.  He follows

2    directions, completes tasks, and is capable of handling stress and changes to his

3    routine. *Id.* at 30; *see id.* at 270, 503, 506.  The ALJ's determination that

4    plaintiff's activities of daily living "tend to show he does have the ability to

5    perform basic work functions" is a clear and convincing reason for discounting

6    plaintiff's credibility. *Id.* at 30; *see Morgan v. Comm'r*, 169 F.3d 595, 600 (9th

7    Cir. 1999); *Smolen*, 80 F.3d at 1284; *Molina*, 674 F.3d at 1113.

8        In sum, the ALJ provided several clear and convincing reasons supported by

9    substantial evidence for finding plaintiff less than fully credible.  As such, the ALJ

10   did not err in discounting plaintiff's credibility.

11                                           **V.**

12                          **<u>REMAND IS APPROPRIATE</u>**

13       The decision whether to remand for further proceedings or reverse and

14   award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

15   888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this

16   discretion to direct an immediate award of benefits where: "(1) the record has been

17   fully developed and further administrative proceedings would serve no useful

18   purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting

19   evidence, whether claimant testimony or medical opinions; and (3) if the

20   improperly discredited evidence were credited as true, the ALJ would be required

21   to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020

22   (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with

23   instructions to calculate and award benefits).  But where there are outstanding

24   issues that must be resolved before a determination can be made, or it is not clear

25   from the record that the ALJ would be required to find a plaintiff disabled if all the

26   evidence were properly evaluated, remand for further proceedings is appropriate.

27   *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*,

28   211 F.3d 1172, 1179-80 (9th Cir. 2000).  In addition, the court must "remand for

                                           22

further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is required because it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated. On remand, the ALJ shall reconsider the VE testimony, and if necessary obtain additional VE testimony, to determine the level of adjustment required of plaintiff to apply those skills identified as transferable to the other work. The ALJ shall then proceed through step five, making explicit all required determinations.

## VI.

## <u>CONCLUSION</u>

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: August 3, 2016

SHERI PYM
United States Magistrate Judge